WILLIAMS, Judge.
This is an appeal by plaintiff Executive Office Centers, Inc. [“EOC”] from a judgment interpreting an agreement with defendant Henry R.J. Cournoyer, relative to the purchase of an office building. Defendant Cournoyer has answered the appeal.
Plaintiff and defendant entered into an agreement for defendant to purchase an office building in the Central Business District in New Orleans. At the time of the closing, held on December 29-30, 1978, defendant became concerned about the amount of maintenance and repair expenses that the building needed in 1978. Defendant asserts that because of different representations made by plaintiff, the parties entered into a warranty agreement, made part of the Act of Sale. In the agreement, plaintiff warranted that the maintenance and repair expenses for 1978 did not exceed $6,755.13.
Plaintiff was the holder of a second mortgage of $341,154.56 on the building. It was an interest only note, with a balloon at the end of six years. In the event that an audit showed that more than $6,755.13 had been spent on repair and maintenance, defendant would receive a tenfold credit against principal for the amount of excess. When the note became due a dispute arose over the amount owed in view of the war *737 ranty agreement. The agreement is reproduced as Appendix A of this opinion.
Defendant paid plaintiff $103,722.31, which it claimed was the undisputed portion of the principal balance. The remainder, $237,432.25 was deposited in the registry. Because the check for $103,722.31 had conditional language indicating that it was in full satisfaction of the debt, plaintiff returned it to defendant. The check was resubmitted without condition. Defendant then filed for injunctive relief to prevent the seizure and sale of the building and alleging that he was due a credit under the warranty agreement.
The trial court appointed an expert on its own behalf, in order to assist it in its determination in this case. The records and tax returns of the plaintiff indicated that repair and maintenance expenses for the building in 1978 were $21,234.40. The warranty agreement, however, defines maintenance and repair expenses as:
“[f]or purposes of this agreement, maintenance expenses shall include all items of expense for repairs and maintenance that are considered such by generally accepted accounting principles, provided, however, that any work performed in making tenant’s space ready for a new tenant or expanding or relocating existing tenants in the building shall be considered capital expenses and not included in maintenance expenses. Also, any expenses that are to be reimbursed by tenants shall not be considered maintenance expenses.”
The plaintiff argued that certain entries contained in its books were done so for tax purposes and do not reflect the amount expended on repair and maintenance. The court allowed such items to be reclassified for the purpose of determining expenses pursuant to this agreement, but placed the burden of reclassification on EOC. To this end, the accountants determined which expenses were incurred in 1978 and not merely paid for in 1978 or in 1979.
The accountant appointed by the court issued a report after examining the books and reclassifying certain items as capital expenditures and tenant expenses. The accountant found that $15,420.51 had actually been spent on maintenance and repairs in 1978. After hearing testimony from experts and witnesses for both parties, the trial court adjusted this figure and found that actual repair and maintenance expenses were $17,912.23. The difference, multiplied by ten, was credited to the note. Defendant was then ordered to pay $42,-577.21 to plaintiff, which represented the balance owed plaintiff after the amount due under the warranty agreement had been credited to defendant. The trial court allocated one-half of the cost for its own court appointed accountant to each party. No attorneys’ fees were awarded. The trial court later amended its judgment to reflect a mathematical correction and awarded plaintiff $45,624.12.
Plaintiff has appealed this decision arguing that: (1) the trial court was in error in placing the burden on it to reclassify the expense items from the original entry on the books; (2) the trial court was in error in requiring the plaintiff to prove that the breach occurred rather than placing the burden on defendant; (3) defendant was estopped from making a claim under the warranty agreement because he did not meet his obligation thereunder; (4) the trial court was in error in not accepting the conclusion of facts of its own experts; (5) the trial court did not properly interpret the limited warranty agreement; (6) the trial court was in error in “rewriting” the limited warranty agreement; (7) and the trial court was in error in not awarding attorneys’ fees. ,
Defendant has answered the appeal arguing that the trial court erred by: (1) allowing plaintiff to reclassify repair and maintenance items; (2) refusing to consider elevator expenses as a part of the warranty agreement; (3) not holding that $1,800.00 spent on air conditioning repair was covered by the agreement; and (4) determining that certain expenses for electrical work had been posted to the building in error.
BURDEN OF PROOF
Plaintiff argues that the trial court erroneously placed the burden of proof on it to reclassify items on its books and to prove *738 that a breach of the warranty agreement did not occur.
In his reasons for judgment, the trial judge specifically held that the burden of proving breach of the agreement was on defendant and that the burden of reclassification of expenditures was on plaintiff.
Plaintiffs own records and accounts indicate that over $21,000.00 was spent on repair and maintenance. Plaintiff argues that these do not accurately reflect the expenses incurred during that year. Plaintiff, however, failed to keep an accurate accounting at that time. Defendant argues that the trial court did not commit error in placing the burden of proof on plaintiff, but should not have allowed the reclassification at all.
Based on the facts in this case, we hold that it was not error for the trial court to allow the reclassification, and to place the burden on plaintiff. Furthermore, we agree with defendant that there is nothing in the record to indicate that the trial court placed the burden of proving that there was a breach of the warranty agreement on plaintiff. The trial court clearly placed the burden of proof of breach on defendant.
ESTOPPEL
Plaintiff argues that the defendant should not be allowed to receive any benefit under the limited warranty agreement.
The limited warranty agreement states: “Purchaser shall have the right, at his expense, to audit the books and records of vendors, the managing agent and any other person, firm or corporation under their control where an evidence of the maintenance expenses might exist.... any auditing must be performed between January 15 and February 20, 1979, provided that in the event of dispute between the parties, purchaser shall continue to have access to said books and records until such dispute is resolved and then any adjustments to be made pursuant hereto shall then be made.”
Plaintiff argues that because an audit was not carried out between January 15 and February 20, 1979, defendant is es-topped from asserting its entitlement to any benefit under the agreement. Defendant argues that within the specified period of time, defendant, his attorney, and his real estate manager requested in writing that they be allowed to review the books and records in accordance with the agreement and did examine the records on February 14. No “formal” audit was carried out. Defendant also has argued that plaintiff has waived the estoppel argument: during trial, attorneys for plaintiff claim they were not arguing estoppel.
Although seven years have passed since the warranty agreement was entered into, we believe that defendant has preserved his rights pursuant to the agreement. Within the time frame specified by the agreement, representatives of defendant reviewed the books and determined that there was a problem.
There is nothing in the agreement that sets forth any requirements as to the form and manner of the audit, only the period of time in which it was to take place. The trial court stated that it did not “believe that a right to audit is the same as the requirement that the audit be conducted in accordance with generally accepted accounting principles.” This has been an ongoing problem, and we would find that preventing defendant from recovering under the agreement would have been an abuse of the trial court’s discretion.
COURT’S EXPERT
Plaintiff argues that the trial court erred in not following the conclusions drawn by its own expert. We disagree.
The trial court listened not only to conclusions and testimony of its own expert, but also of witnesses from both plaintiff and defendant. There is no requirement that forces a trial court to accept the conclusions and reports drawn by its own witness. The trial court was free to weigh the testimony of its own expert along with that of the experts presented by both parties.
*739 CLASSIFICATION
Plaintiff and defendant also contest the classification of amounts expended on certain items. Plaintiff argues that money expended on air conditioners was a capital improvement and should not have been classified as maintenance and repair. Testimony by an expert in air conditioning presented by defendant indicated that the money was expended on repairs.
Plaintiff claims that the work done on the air-conditioning system was of such a nature as to have generated a capital expenditure, and the trial court erroneously included this amount as a repair and maintenance expense. We agree.
Plaintiff spent $10,169.76 for work performed on the air conditioning system in 1978. The work done was major, requiring the replacement of vital pieces of equipment, and was characterized by the court’s expert accountant as the rebuilding of the air-conditioning units. The accountant considered these expenses to be capital in nature. Based upon the nature of the work, we agree. As we stated above, the trial court was not required to follow the conclusions of its expert. Nevertheless, his conclusions as to the nature of the air conditioning expenditure, coupled with other evidence in the record, are overwhelming, and require a finding that the work done was a capital expenditure.
Other individual items that were the source of disagreement at trial included two fire hoses in the building’s fire system that were replaced due to deterioration. The trial court correctly concluded that this was a repair and not a capital improvement.
GENERALLY ACCEPTED ACCOUNTING PRINCIPLES
Plaintiff also argues that the trial court misapplied the concept of generally accepted accounting principles. We have reviewed the trial court’s determination in light of the expert accounting evidence presented at trial. We cannot conclude that the court simply ignored accounting principles in its decision. The decision is based on these principles.
TENANT IMPROVEMENTS
Plaintiff also argues about the classification of items termed deferred maintenance as opposed to tenant improvements. Certain items that plaintiff indicated were incurred to make tenant space ready, the trial court found to be “deferred maintenance.” This included shampooing carpets, painting walls after a tenant had moved out, etc. The trial court found that major work such as changing a wall, or relocating a duct, would be tenant make-ready items. Furthermore, a wall painted simply to satisfy a tenant’s desire would be making tenant’s space ready; painting a wall that needed to be painted because of its condition would be repair and maintenance. This is a factual determination, and we find no error in the trial court’s decisions as to these items.
ELEVATOR MAINTENANCE
Defendant asserts that elevator maintenance should have been included as a repair and maintenance expense under the warranty agreement. Plaintiff argues that it was excluded from the agreement. The warranty agreement itself does not exclude elevator maintenance. The trial court held that elevator repair and maintenance expenses were not covered by the warranty agreement. Defendant argues that in the absence of their specific exclusions, these items should have been included.
John Mmahat, one of the partners in EOC, who had participated in the negotiation of the warranty agreement, testified at trial that elevator maintenance and repair were separate items from general repair and maintenance. He also testified that he believed there was a separate attachment to the warranty agreement covering elevator expenses. Defendant’s attorney who had participated in the negotiations did not testify at trial; his deposition testimony was introduced. He stated that elevator maintenance was never discussed.
Based on the evidence presented at trial, it was not an abuse of discretion for the judge to rule that elevator expenses were not within the scope of the warranty *740 agreement. Elevator maintenance and repair generally is a separate category from general maintenance and repair for accounting purposes, as well as for tax purposes. Mr. Mmahat’s testimony supports the accepted separation of these two types of repair and maintenance expenses.
AIR CONDITIONING REPAIRS
Also in disagreement is $1,800.00 expended for air conditioning repairs that appeared on the closing statement between the parties. At the time that the purchase agreement was in effect, but before the actual act of sale, a tenant in the building complained that the air conditioning was in need of repair. All parties agreed to adjust this cost on the closing statement. The trial court excluded this $1,800.00 finding “I also conclude that the $1,800.00 air conditioning expenditure for the Apple Seed was not intended to be covered by the warranty agreement since it was paid by purchaser at the request of the tenant. The purchaser must have known it was not and would not be reflected in the vendor’s books.”
This was a factual determination made by the trial court, and we cannot hold that it has an abuse of discretion.
ELECTRICAL EXPENSES
Defendant argues that the trial court erred in determining that $5,458.34 for repairs done by Sharp Electric was posted to the building erroneously.
The president of Sharp Electric testified that his company had not performed repairs in the building. His testimony was supported by the Acting Chief Electrical Inspector for the City of New Orleans, who stated that no permits were issued for Sharp Electric or the building in 1978. The inspector also testified that Sharp Electric does not do work without the necessary permits. His ledger sheets confirmed his testimony.
On the basis of this testimony, the trial court’s decision to not consider $5,458.34 as maintenance and repair expense is not manifestly erroneous.
ATTORNEY’S PEES
Finally, plaintiff argues that the trial court was in error in refusing to award attorneys’ fees. The promissory note, under which defendant owes plaintiff, provides for collection of attorneys’ fees in the event that it becomes necessary to file suit. It should be noted, however, that defendant paid plaintiff the undisputed portion of the note and deposited the remainder with the registry of the court. Considering the facts of this case, it was not an abuse of the trial court’s discretion to refuse to award attorneys’ fees.
For the foregoing reasons, the decision of the trial court is affirmed and amended to reflect 1978 maintenance and repair expenses of $7,742.47. The difference between $7,742.47 and $6,755.13 multiplied by ten is $9,873.40, which is the credit due defendant on the note.
AFFIRMED AND AMENDED.
APPENDIX A
WARRANTY AGREEMENT
December 29, 1978
The undersigned parties, being vendors and purchaser of the Medallion Tower Building, 344 Camp Street, do hereby agree as follows:
Vendors have warranted and do hereby warrant to purchaser that the general repair and maintenance expenses for the building for calendar year 1978 was $6,755.13 (“maintenance expenses”) as shown on the statement of expenses attached hereto. Purchaser shall have the right, at his expense to audit the books and records of vendors, the managing agent and any other person, firm or corporation under their control wherein evidence of the maintenance expenses might exist. Purchaser, or his agent, shall have the right, at all reasonable times, to conduct this audit on the premises of the party or parties in possession of the relevant books or records, and vendors agree to fully cooperate with same.
In the event that the audit reveals maintenance expenses in excess of $6,755.13, *741 then such excess, multiplied by ten, shall be subtracted from the principal balance of the vendor’s lien note, and any interest paid on said amount by which the principal is reduced shall be credited against interest to accrue thereafter.
For purposes of this agreement, maintenance expenses shall include all items of expense for repairs and maintenance that are considered such by generally accepted accounting principles, provided, however, that any work performed in making tenant space ready for a new tenant or expanding or relocating existing tenants in the building shall be considered capital expenses not included in maintenance expenses. Also, any expenses that are to be reimbursed by tenant shall not be considered maintenance expenses.*
Vendors agree not to negotiate vendor’s lien note to the prejudice of this agreement.
Any auditing must be performed between January 15 and February 20, 1979, provided that in the event of dispute between the parties, purchaser shall continue to have access to said books and records until such dispute is resolved and then any adjustments to be made pursuant hereto shall then be made.
In the event that vendor’s [sic] also want to conduct an audit and it differs from the audit results of purchaser’s audit, then the two auditors shall select a third auditor to conduct a new audit, whose results shall be binding on both parties and shall be paid for by the party whose audit results differ the most from the third auditor’s results.

But this exclusion does not apply to any expenses that may be claimed to be reimbursable by virtue of escalation clauses in any lease,